IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00425-RBJ

HOLLY KAY GONZALEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying claimant Holly Kay Gonzalez's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

**I. Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not

substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Ms. Gonzalez, who was born on March 21, 1968, lives in Pueblo, Colorado. She has previously worked as grocery store cashier, but she has not engaged in any significant work activity since her amended alleged onset date of June 29, 2006. Ms. Gonzalez has a history of mental health problems, including post-traumatic stress disorder, depression, and drug and alcohol abuse.

### A. Procedural History

On April 17, 2007 Ms. Gonzalez filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging disability due to severe mental impairments beginning on August 31, 2003. The claim was initially denied on August 15, 2007. Ms. Gonzalez then filed a request for a hearing, and a hearing was held in front of Administrative Law Judge Richard J. Maddigan on March 2, 2010. The ALJ issued a decision denying Ms. Gonzalez's request for benefits on March 31, 2010. The Commission denied her request for review on May 17, 2012, and Ms. Gonzalez filed a timely appeal in the U.S. District Court for the District of Colorado.

On September 16, 2013 Senior Judge Wiley Y. Daniel vacated the ALJ's decision and remanded the case for further action due to the ALJ's failure to properly weigh the medical evidence. Pursuant to the District Court's order, the ALJ held another hearing on February 24, 2014. At that hearing, Ms. Gonzalez amended her alleged onset date to June 29, 2006. On March 27, 2014 the ALJ issued a decision that once again denied Ms. Gonzalez's requests for benefits. The Commission denied her second request for review on February 4, 2015 and Ms.

Gonzalez filed a timely appeal with this Court.

### B. The ALJ's Decision

The ALJ issued his second unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. At step one, the ALJ found that Ms. Gonzalez had not engaged in substantial gainful activity (SGA) since her alleged onset date of June 29, 2006. R. at 514. Next, at step two, the ALJ found that Ms. Gonzalez had the following severe impairments: depression, post-traumatic stress disorder and a history of alcoholism and illicit drug use. R. at 514. At step three, the ALJ concluded that Ms. Gonzalez did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 514. The ALJ then found that Ms. Gonzalez had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, unskilled tasks, requiring limited interaction with supervisors, co-workers and the general public in a low stress work environment." R. at 517. Turning to step four, the ALJ found that Ms. Gonzalez was not capable of performing any past relevant work. R. at 532. Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Ms. Gonzalez could perform. R. at 533. He thus concluded that Ms. Gonzalez had not been under a disability. R. at 534.

### III. Discussion

Ms. Gonzalez alleges that the ALJ committed several errors while determining her RFC. Specifically, Ms. Gonzalez contends the following: (1) the ALJ erred in the weight he assigned to the medical opinions, and (2) the ALJ's RFC finding failed to account for moderate mental limitations in medical opinions that were afforded "some weight."

### A. The Weight Assigned to Medical Opinions

Ms. Gonzalez argues that the ALJ improperly weighed the opinions of Dr. Ryan, Dr. Madsen, Dr. Vega, and Mr. Leeman. ECF No. 14 at 18-21. The Court will address each opinion in turn. For the reasons discussed below, the Court declines to remand the ALJ's opinion based on his assessment of what weight to afford the opinions of Ms. Gonzalez's treatment providers.

#### 1. Dr. Ryan

Dr. Ryan is a State agency psychological consultant that reviewed Ms. Gonzalez's medical records and conducted a Case Analysis on August 14, 2007. R. at 416-34. "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The ALJ must provide a "legally sufficient explanation" for relying on the opinion of a non-examining physician over that of a treating or examining physician. *Id*. An ALJ's reliance on an agency medical consultant's opinion must be supported by evidence in the case record. *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) (citing SSR 96-6P, 1996 WL 374180, at *2).

Considering the present case, Dr. Ryan's opinion indicated that Ms. Gonzalez was "alcohol dependen[t]" and had experienced one or two episodes of decompensation. R. at 429, 431. Dr. Ryan opined that Ms. Gonzalez had no more than a moderate limitation in any ability. R. at 530; *see also* R. at 417-18. Dr. Ryan assessed Ms. Gonzalez as able to perform work that requires little judgment, involving simple tasks that can be learned in one month. R. at 419. Dr. Ryan also concluded that, while Ms. Gonzalez can permissibly interact with supervisors and co-workers, she should have less contact with the public. R. at 419.

The Court finds that the ALJ properly examined the relevant factors and adequately explained his decision regarding which weight to afford Dr. Ryan's opinion. The ALJ found that overall the opinion was "well supported by and consistent with the record as a whole." R. at 530; *see also* 20 C.F.R. § 416.927(c)(3) – (c)(4) (identifying "supportability" and "consistency" as two factors relevant to the analysis of what weight to give to a medical opinion). However, the ALJ did identify some inconsistencies between Dr. Ryan's opinion and the record. R. 530. Accordingly, the ALJ decided to only afford Dr. Ryan's opinion "some weight." [1] The ALJ considered these inconsistencies when he formulated his RFC findings, which were more restrictive than Dr. Ryan's opinion. R. at 530. While Dr. Ryan only limited Ms. Gonzalez's interactions with the public, the ALJ restricted interactions with supervisors and co-workers as well. R. at 517, 530. The ALJ also restricted Ms. Gonzalez to working in a low stress environment while Dr. Ryan did not. R. at 530; *see also* R. at 419. The additional restrictions in the ALJ's RFC findings offer further evidence that the ALJ did not afford Dr. Ryan's opinion undue weight. The ALJ also did "not commit reversible error by electing to temper" the findings in Dr. Ryan's opinion "for [Ms. Gonzalez's] benefit." *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

The Court also disagrees with Ms. Gonzalez's argument that the ALJ's decision to afford Dr. Ryan's opinion "some weight" was contrary to the District Court's decision in the first appeal. Ms. Gonzalez contends that the ALJ's reliance on Dr. Ryan's opinion ignored the

---

[1] Although the ALJ gave Dr. Ryan's opinion "great weight" when he made the step three determination that Ms. Gonzalez did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, *see* R. at 516, Ms. Gonzalez apparently only takes issue with the ALJ's decision to give Dr. Ryan's opinion "some weight" when assessing Ms. Gonzalez's RFC, *see* ECF No. 14 at 19.

District Court's conclusion in the first appeal that the ALJ's failure to give any rationale for affording Dr. Ryan's opinion "significant weight" was "particularly problematic" given that Dr. Ryan did not have an opportunity to review the opinions of Mr. Leeman and Dr. Vega, Ms. Gonzalez's examining physician. ECF No. 14 at 19; *see also* R. at 584-85. However, the District Court in the first appeal did not hold that the ALJ was precluded from giving Dr. Ryan's opinion any weight on remand. *See* R. at 585. Rather, the District Court directed the ALJ to consider the relevant factors in assessing the weight to afford Dr. Ryan's opinion and properly explain his decision. *See* R. at 585 (holding that the ALJ's failure to "provid[e] any rationale for his decision" giving "the most weight to [Dr. Ryan's opinion" was reversible error).

Considering the ALJ's second decision, the Court acknowledges that Dr. Ryan did not have an opportunity to consider the opinions of Mr. Leeman and Dr. Vega, the treating and examining medical professionals that issued opinions after Dr. Ryan issued hers. *See* 20 C.F.R. § 416.927(c)(3) – (c)(4) (a factor relevant to the analysis of what weight to afford a nonexamining medical source opinion is the degree to which the opinion considers "opinions of treating and other examining sources"). Nevertheless, the ALJ noted that Ms. Gonzalez had not received "any specialized mental health treatment with a psychologist or psychiatrist" since her alleged onset date. R. at 519. While Ms. Gonzalez completed counseling sessions with Mr. Leeman, a marriage counselor and not a licensed medical professional, she attended the sessions "sporadically." R. at 519. Similarly, at her attorney's behest, Ms. Gonzalez met with Dr. Vega for the limited purpose of undergoing a "consultive, psychological evaluation." R. at 523. Finally, the ALJ found Mr. Leeman and Dr. Vega's opinions to be unduly based on Ms. Gonzalez's subjective observations and inconsistent with the record. *See infra* A2 and A3. Therefore, the ALJ properly explained why he afforded Dr. Ryan's opinion "some weight" even

though Dr. Ryan did not have an opportunity to review Mr. Leeman and Dr. Vega's opinions, which is all the District Court decision on the first appeal required.

In sum, the Court finds that the ALJ properly examined the relevant factors and adequately explained his decision to give Dr. Ryan's opinion "some weight." Accordingly, the ALJ did not err in his assessment of what weight to afford Dr. Ryan's opinion.

### 2. Dr. Madsen and Dr. Vega

Dr. Madsen and Dr. Vega both conducted psychological evaluations of Ms. Gonzalez. R. at 411, 487. Dr. Madsen conducted two psychological evaluations of Ms. Gonzalez. Dr. Madsen's first evaluation took place on August 6, 2007. R. at 411. Based on that evaluation Dr. Madsen concluded that Ms. Gonzalez would have difficulty maintaining a regular work schedule, focusing and concentrating on work, and relating to peers, coworkers, supervisors, and the general public. R. at 414. Dr. Madsen's second evaluation took place on February 3, 2014. R. at 688. Based on his second evaluation Dr. Madsen concluded that Ms. Gonzalez had a limited ability to focus and concentrate, interference with her energy and motivational levels, and that her ability to do work-related activities was significantly impaired. R. at 691.

Dr. Vega conducted a single psychological evaluation of Ms. Gonzalez on February 11, 2010. R. at 487. Based on his evaluation of Ms. Gonzalez, Dr. Vega concluded that Ms. Gonzalez displayed difficulties with recall and abstract reasoning, as well as psychosocial, environmental, and occupational problems. R. at 491. Consequently, Dr. Vega opined that Ms. Gonzalez would have difficulty meeting the demands of competitive employment, particularly in dealing with social interactions. R. at 491-92.

The ALJ afforded Dr. Madsen's first opinion and Dr. Vega's opinion "little weight" because both doctors "relied heavily" on Ms. Gonzalez's inconsistent subjective complaints that

7

were not supported by evidence in the record. R. at 523-24, 525-26. The ALJ was not entitled to discount the doctors' opinions for the sole reason that they were based on Ms. Gonzalez's subjective complaints. *See Cf. Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished) ("The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements."); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests."). However, the ALJ's decision to afford the opinions "little weight" was not based exclusively on Dr. Madsen's and Dr. Vega's reliance on Ms. Gonzalez's subjective complaints. Rather, the ALJ evaluated the opinions using the factors listed in 20 C.F.R. § 416.927(c). *See* 20 C.F.R. § 416.927(c) (listing the factors used "in deciding the weight [to] give to any medical opinion"). The ALJ provided an extensive explanation of the inconsistencies between the statements Ms. Gonzalez gave to Dr. Madsen and Dr. Vega and other evidence in the record. R. at 522-26; *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ also thoroughly discussed how Dr. Madsen and Dr. Vega did not attempt to reconcile Ms. Gonzalez's inconsistent statements, nor did the doctors properly inquire in to relevant aspects of her life. R. at 522-26; *see also* 20 C.F.R. § 416.927(c)(3); 20 C.F.R. § 416.927(c)(4) (identifying "[s]upportability" as a factor that is considered when deciding the weight to give to a medical opinion and stating that a medical opinion will be given more weight if the medical source "presents relevant evidence to support [the] opinion" and provides an adequate "explanation . . . for [the] opinion"). Additionally, Ms. Gonzalez made several statements throughout the proceedings that conflicted with evidence in the record. 518-19, 526-27. Consequently, the ALJ determined that Ms. Gonzalez was not credible. R. at 525-26. This also contributed to the ALJ's

decision to afford the opinions "little weight," given that both doctors' opinions necessarily relied on Ms. Gonzalez's subjective statements. R. at 523, 525. The Court finds that the ALJ's credibility determination, which is "peculiarly the province of the finder of fact," is "supported by substantial evidence." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Considering this, the ALJ properly refused "to credit [the] opinions of . . . examining medical providers that depended on [Ms. Gonzalez's] veracity." *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

Regarding Dr. Madsen's second opinion, the ALJ found that while the opinion also reflected Ms. Gonzalez' inconsistent and unsupported subjective complaints, Dr. Madsen's conclusions did support some of the findings in the opinion. R. at 528. Some of Dr. Madsen's findings were also corroborated by other evidence in the record. R. at 528. These are proper considerations in determining what weight to afford Dr. Madsen's second opinion, *see* 20 C.F.R. § 416.927(c)(3); 20 C.F.R. § 416.927(c)(4). Therefore, the ALJ did not err in his assessment of what weight to afford Dr. Madsen's and Dr. Vega's opinions.

### 3. Mr. Leeman

Chris Leeman is Ms. Gonzalez's former marriage counselor. R. at 482. Mr. Leeman is thus considered an "other source" and not a "medical source" under the applicable regulations. *See* SSR 06-3p, 2006 WL 2329939, at *2; *see also* 20 C.F.R. § 416.913(a) and (d). While opinions from "'other sources' cannot establish the existence of a medically determinable impairment" and may not be given controlling weight, these opinions "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, at *2. Opinions from "other sources" are evaluated using the factors listed in 20 C.F.R. § 416.927(c). *See* SSR 06-3p, 2006 WL 2329939, at *2. "In the case of" an

opinion from a non-medical source, "the ALJ's decision is sufficient if it permits [the reviewing court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06-3p, 2006 WL 2329939, at *6)).

Considering the present case, Ms. Gonzalez attended counseling sessions with Mr. Leeman from August 14, 2008 to February 2010. R. at 482. A patient summary completed by Mr. Leeman in February 2010 indicated that Ms. Gonzalez had completed 21 sessions over an 18-month period. R. at 482. Despite how infrequently Ms. Gonzalez met with Mr. Leeman, the patient summary indicated that Ms. Gonzalez was experiencing "lower levels of anxiety" and "fewer panic attacks." R. at 483. Ms. Gonzalez was also "moving in an active and engaging way in reestablishing visitation with her children" and her discussions with Mr. Leeman regarding "her children . . . and investigating future vocation" were "optimistic." R. at 483. Mr. Leeman concluded that Ms. Gonzalez "had [ ] moderate limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation, with some marked limitations." R. at 529.

The Court finds that the ALJ's decision regarding what weight to give Mr. Leeman's opinion properly examined the relevant factors and is sufficient to allow the Court to follow the ALJ's reasoning. The ALJ determined that Mr. Leeman's opinion was "entitled to only some weight" after considering the extent to which the opinion was consistent with other evidence in the record and whether Mr. Leeman adequately supported his conclusions. R. at 529-30; *see also* 20 C.F.R. § 416.927(c)(3)-(4). Like his evaluation of Dr. Madsen's and Dr. Vega's opinions, the ALJ found that Mr. Leeman's findings "lack[ed] objective support" and were based on Ms. Gonzalez's subjective complaints. R. at 530. The ALJ also noted inconsistencies between the statements Ms. Gonzalez gave to Mr. Leeman, Mr. Leeman's conclusions, and the record as a

whole. For example, Mr. Leeman indicated that Ms. Gonzalez's symptoms were improving and that she was able to interact with her children, even though he diagnosed Ms. Gonzalez with moderate and marked mental and social interaction limitations. R. at 529-30. However, the ALJ also found that some of Mr. Leeman's findings were consistent with the opinions of other medical professionals and evidence in the record, and consequently gave the opinion "some weight." R. at 530.

Considering this, the ALJ's decision was sufficient to allow the Court to follow the ALJ's reasoning, *see Keyes*-Zachary, 695 at 1164, and the Court finds that the ALJ did not err in his assessment of what weight to give Mr. Leeman's opinion.

### B. Consideration of Mental Limitations in the RFC finding

Finally, Ms. Gonzalez argues that the ALJ's RFC finding failed to account for the moderate mental limitations in Dr. Ryan's opinion, Dr. Madsen's second opinion, and Mr. Leeman's opinion, which all were afforded "some weight." ECF No. 14 AT 22-34. [2] Specifically, Ms. Gonzalez argues that: (1) the ALJ rejected some of the moderate limitations in the three opinions while accepting others without explanation; and (2) the ALJ's limitation to simple, unskilled work did not account for moderate mental limitations in the three opinions. ECF No. 14 at 22-34.

Regarding Ms. Gonzalez's first argument, the Court finds that the ALJ adequately

---

[2] Ms. Gonzalez also argues that the ALJ was incorrect in asserting that the POMS prevented him from using the moderate limitations in Dr. Madsen's and Mr. Leeman's opinions. ECF No. 14 at 33-34. I disagree. The ALJ never suggested that the POMS precluded him from considering the moderate limitations in the opinions. Rather, the ALJ simply pointed out that Dr. Madsen's and Mr. Leeman's responses in "the worksheet portion of the Mental Residual Functional Capacity (MRFC) form" must be considered in conjunction with "the narrative portion of the mental assessment located in Section III of the MRFC." R. at 528-29; *see also Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015) (noting that while "[t]he POMS provide[ ] that Section III of the MRFCA, not Section I, is for recording [the] formal mental RFC assessment," the ALJ may not "turn a blind eye to moderate Section I limitations" and the section III narrative must "describe the effect that each of the Section I moderate limitations would have on the claimant's ability").

explained why he accepted some of the moderate limitations in the opinions while rejecting others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that the ALJ erred by rejecting restrictions in a doctor's RFC assessment while apparently adopting others without explanation). The ALJ did not simply "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004). Rather, the ALJ provided evidentiary support for his decisions to accept some limitations and reject others, and he properly evaluated the degree to which the mental limitations conflicted with other evidence in the record. *See* R. at 528, 529-30; *see also Haga*, 482 F.3d at 1208; *see also Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012).

However, while the ALJ explained why he accepted some moderate limitations and rejected others, his reasoning for how the restriction to simple, unskilled tasks accounted for the moderate limitations accepted by the ALJ was contrary to Tenth Circuit precedent. Specifically, Dr. Ryan, Dr. Madsen and Mr. Leeman identified moderate limitations in Ms. Gonzalez's ability to: (1) maintain attention and concentration for extended periods; and (2) carry out short and simple instructions. R. at 417, 528, 530. The ALJ found that these moderate limitations "support[ed] the finding that the claimant can perform simple, unskilled work." R. at 528, 530. However, a limitation to simple, unskilled work does not account for mental impairments—the moderate limitations at issue here. *Chapo v. Astrue*, 682 F.3d 1283, 1290 n.3 (10th Cir. 2012). Further, SSR 85-15 indicates that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15, 1985 WL 56857, at *4 (1985). Considering this, "[n]one of the basic mental abilities of unskilled work described in

SSR 85-15 captures" Dr. Madsen's and Mr. Leeman's moderate limitations. *Jaramillo v. Colvin,* 576 Fed. Appx. 870, 876 (10th Cir. 2014) (unpublished). The further limitation to Ms. Gonzalez's interaction with supervisors, co-workers, and the general public does capture Dr. Ryan's, Dr. Madsen's and Mr. Leeman's moderate social interaction limitations. *See* R. at 418, 483-84, 693. However, neither that restriction nor the restriction to a low stress environment are "logically connected to" the moderate limitations in Ms. Gonzalez' ability to concentrate and carry out instructions. *See Jaramillo,* 576 Fed. Appx. at 877.

As the Tenth Circuit has explained: "A moderate impairment is not the same as no impairment at all. Instead, it supports the conclusion that the individual's capacity to perform the activity is impaired, and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding." *Id*. at 875.[3] Here, the ALJ failed to relate "with sufficient precision" Ms. Gonzalez's moderate limitations in the RFC finding and hypothetical to the VE. *Id*. at 876. Therefore, the ALJ's reliance at step five on the jobs identified by the VE in response to the hypothetical was not supported by substantial evidence. *See Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."). Thus, this case must be remanded for a proper assessment of Ms. Gonzalez's RFC. Once the Commissioner has properly assessed Ms. Gonzalez's RFC, the Commissioner can pose accurate hypothetical questions to the Vocational Expert at steps four and five.

### IV. Conclusion

In sum, while the ALJ properly weighed the medical evidence, the ALJ's limitation in the

---

[3] Although *Jaramillo v. Colvin* is unpublished, the Court finds its reasoning persuasive.

RFC finding to simple, unskilled work did not account for moderate mental limitations in the medical opinions. Therefore, the RFC finding and hypotheticals to the VE at steps four and five were not based on substantial evidence. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).[4] Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 18th day of March, 2016.

BY THE COURT:

R. Brooke Jackson
United States District Judge

---

[4] The Court rejects Ms. Gonzalez's argument that she is entitled to an immediate award of benefits. ECF No. 14 at 40-42. While Ms. Gonzalez's claim has been pending for a substantial amount of time, this case does not adequately reflect other factors that the Tenth Circuit has cited as supporting an immediate award of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citing "the length of time the matter has been pending" as just one "relevant factor" when assessing whether to award benefits). Ms. Gonzalez has not "exceeded what a claimant can legitimately be expected to prove to collect benefits," nor is there evidence that the ALJ "resent[s]" or has "disrespect[ed]" Ms. Gonzalez. *See Sisco v. U.S. Dept. of Health & Human Srvcs.*, 10 F.3d 739, 745-46 (10th Cir. 1993). A review of the record as a whole also does not definitively "support[ ] the conclusion that [Ms. Gonzalez] is disabled." *Frey v. Brown*, 816 F.2d 508, 518 (10th Cir. 1987).